UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALICIA CASTILLO-PATTERSON,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-01373-JNW<br><br>ORDER GRANTING PETITION FOR HABEAS CORPUS |

## 1. INTRODUCTION

This matter comes before the Court on Petitioner's petition for writ of habeas corpus. Dkt. No. 1. Having reviewed the petition, the return, Dkt. No. 12, the traverse, Dkt. No. 15, and all other supporting materials, the Court GRANTS the petition.

## 2. BACKGROUND

Petitioner Alicia Castillo-Patterson is a 39-year-old citizen and national of Nicaragua. She entered the United States on or around November 20, 2022, to seek asylum and was subsequently apprehended by U.S. Customs and Border Protection

ORDER GRANTING PETITION FOR HABEAS CORPUS - 1

agents. Dkt. No. 3 ¶ 2, Dkt. No. 13 ¶ 6. She was released on parole and settled in Baltimore, Maryland. Dkt. No 3 ¶ 4, Dkt. No. 13 ¶ 7; Dkt. No. 14-1.

While living in Baltimore, Castillo-Patterson began a relationship with a man who abused and raped her every day for five months. Dkt. No. 3 ¶ 6. Castillo-Patterson briefly fled to Florida to escape her abuser only for him to follow her. Dkt. No 3 ¶ 7. Her abuser was arrested after attacking Castillo-Patterson while in Florida; Castillo-Patterson returned to Baltimore where she lived for two years. *Id.* ¶ 8. On September 23, 2023, she reported to the Office of Enforcement and Removal Operations (ERO) located in Baltimore, where she was issued a Notice to Appear asserting that she was inadmissible under the Immigration and Nationality Act ("INA") as a non-citizen present in the United States without being admitted or paroled. Dkt. No. 13 ¶¶ 7–8; Dkt. No. 14-6.

Between January and February 2025, Castillo-Patterson twice appeared for preliminary master calendar hearings in Baltimore Immigration Court, both resulting in her case being reset for further calendar hearings. Dkt. No. 13 ¶ 9. Castillo-Patterson's third hearing was scheduled for June 24, 2025, but she was informed that her abuser had returned to Baltimore and was looking for her. Dkt. No. 3 ¶ 9. Again she fled—this time to New York—and missed her June 24, 2025, individual hearing. Dkt. No. 3 ¶¶ 9–11. Due to her failure to appear, the Immigration Judge ordered Castillo-Patterson to be removed in absentia. Dkt. No. 14–7; Dkt. No. 3 ¶ 12.

On October 28, 2025, while in Endicott, New York, Castillo-Patterson was arrested by police officers while she was a passenger in a vehicle with two friends.

ORDER GRANTING PETITION FOR HABEAS CORPUS - 2

Dkt. No. 3 ¶ 14–19; Dkt. No. 13 ¶ 12. Upon her arrest, she was transferred to custody of the United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), and was held at the agency's Syracuse Holding Room and then transferred to Niagara County Jail. Dkt. No. 13 ¶ 14. Over the course of a month, Castillo-Patterson was transferred between ICE detention facilities in New York, Louisiana, Arizona, Texas, and, eventually, was held in the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where she remains. Dkt. No. 13 ¶ 14; Dkt. No. 3 ¶¶ 23–32.

While at NWIPC, Castillo-Patterson moved to re-open her removal proceedings on the basis of her abuse. Dkt. No. 3 ¶ 34–35. The Immigration Judge granted the motion. Dkt. No. 13 ¶ 17. While her immigration appearance was pending, Castillo-Patterson filed the instant petition for writ of habeas corpus, claiming that her prolonged detention is unconstitutional and violates the Administrative Procedure Act ("APA"). Dkt. No. 1. She seeks her immediate release, an order enjoining her re-detention absent written notice and a hearing, and declaratory relief. *Id.* at 27.

While her habeas case was pending, an Immigration Judge reviewed Castillo-Patterson's reopened case and, on June 11, 2026, ordered her removed. Dkt. No. 18 ¶ 4. At the time, Castillo-Patterson waived her appeal and later signed her Notice of Removal. *Id.* ¶¶ 4, 5. However, her waiver was not made knowingly or voluntarily, and she could not read the Notice of Removal, which was presented to her in English. Dkt. No. 19-1 ¶¶ 12, 14. In his June 15, 2026, declaration, Nhat Truong, an ERO Deportation Officer, claims that removal documents have been prepared for

Castillo-Patterson, and that ICE intends to remove her "to Nicaragua expeditiously." *Id.* ¶¶ 6–7.

### 3.  LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. § 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

In addition to habeas relief, federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th

ORDER GRANTING PETITION FOR HABEAS CORPUS - 4

Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, Case No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42). A plaintiff seeking a permanent injunction must demonstrate "(1) that [he] ha[s] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## 4.  DISCUSSION

Castillo-Patterson mounts both constitutional and statutory challenges to her detention in support of her petition. First, she argues that her arrest violates the Fourth Amendment because she was detained and arrested by police based on her race, not any reasonable suspicion. Second, she argues that her detention without written notice and opportunity to be heard violates the Due Process Clause of the Fifth Amendment. Third, she argues that her warrantless arrest violates the Administrative Procedure Act.

The Parties are at odds as to whether Castillo-Patterson's Fourth Amendment and APA claims provide her a basis for release from custody. Dkt. No. 12 at 4; Dkt. No. 15 at 10. However, the Court need not decide on this issue to rule

ORDER GRANTING PETITION FOR HABEAS CORPUS - 5

on the petition; it need only address the now-commonplace due process argument to grant the relief sought by Castillo-Patterson.

### 4.1 Castillo-Patterson's re-detention without notice and a pre-deprivation hearing violates procedural due process.

Under *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), courts weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest to determine what process is constitutionally required. All three *Mathews* factors favor Castillo-Patterson. First, her private interest is perhaps at its height, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty protected by the Due Process Clause." *Zadvydas*, 533 U.S. at 690. Castillo-Patterson lived in the community for over three years, applied for work authorization, and developed community ties—all in reliance on her release. Dkt. No. 3 ¶¶ 3–5.

Second, the risk of erroneous deprivation is high. The in absentia removal order that purportedly triggered her re-detention was eventually reopened due to Castillo-Patterson's extenuating circumstances, and was nevertheless not the motivating force behind her re-detention. See, e.g., *Gregorio Ordonez v. Bondi*, No. 2:25-CV-02356-JHC-TLF, 2025 WL 3852444, at *3–4 (W.D. Wash. Dec. 19, 2025), *report and recommendation adopted*, No. 2:25-CV-02356-JHC-TLF, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026).

Third, the Governments interest in re-detaining non-citizens previously released without a hearing is low: although it would require the expenditure of

ORDER GRANTING PETITION FOR HABEAS CORPUS - 6

finite resources (money and time) to provide Petitioner notice and a hearing prior to arresting and re-detaining her, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g., Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

The Court notes that a petitioner's final removal order and strong evidence of imminent removal may weigh in favor of the Government in the second and third factors. *See, e.g., Saechao v. Scott*, No. 2:26-CV-00548-TMC, 2026 WL 626765, at *4 (W.D. Wash. Mar. 5, 2026). In *Saechao,* the *Mathews* factors favored the Government—despite what the court acknowledged was "effectively no pre-detention process"—because ICE obtained a travel document before re-detention and had concrete plans for removal to Laos. *Id.* at *6. That was not the case here. Castillo-Patterson was arrested during a surveillance operation targeting a different individual, and her removal order was discovered only after she was taken into custody. Courts have found a high risk of erroneous deprivation under precisely these circumstances. *See Gregorio Ordonez*, 2025 WL 3852444, at *3–4 (granting habeas where petitioner was detained during a surveillance operation targeting a different person and removal order was identified only after arrest); *Gomez v. Albarran*, No. 26-CV-01790-NW, 2026 WL 1229590, at *6 (N.D. Cal. May 5, 2026) (finding all three *Mathews* factors favored petitioner with longstanding in absentia order who was arrested without warning and without pre-deprivation process).

Recent developments in Castillo-Patterson's immigration case only deepen the concern that pre-deprivation process was meant to address. The Court has serious concerns regarding whether Castillo-Patterson's waiver of her right to an appeal of the IJ's order was made knowingly or voluntarily. *See* Dkt. No. 19-1 ¶¶ 11–12. She was provided her removal documents in English, a language which she neither speaks nor reads, and was pressured to sign. *Id.* ¶¶ 4, 14. And she has voiced concerns regarding her memory and competency that may undermine the finality of the most recent immigration proceedings. In short, Castillo-Patterson's final order of removal may not be as final as the Government asserts. And regardless, the constitutional deprivation at issue occurred on October 28, 2025; any subsequent process afforded to Castillo-Patterson in June 2026 does not cure the original violation or preclude her desired remedy.

Applying the *Mathews* test, this Court finds that due process requires pre-deprivation notice and a hearing before revoking a noncitizen's order of supervision and re-detaining them. *Aslan v. Wamsley et al.*, Case No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).[1]

---

[1] Courts in this district and elsewhere have consistently reached the same conclusion. *See, e.g., Tessema v. Bondi*, No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), *report and recommendation adopted*, No. C25 2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."); *Tesara v. Wamsley*, Case No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025) (even when it alleges supervised release

This case presents nothing that would warrant a different result. Respondents concede that no notice or pre-deprivation hearing was provided. They argue that further process is not warranted because Castillo-Patterson was subject to an in absentia removal order after "knowingly faili[ing] to appear for a hearing." Dkt. No. 12 at 7. But contrary to Respondents' claims, an in absentia removal order does not obviate the Government's requirement to provide notice and a pre-detention hearing necessary to comply with procedural due process. *See Gregorio Ordonez*, 2025 WL 3852444, at *3. Castillo-Patterson's re-detention violates due process. This is a basis for her immediate release.

### 4.2   Respondents must follow the law if they re-detain Castillo-Patterson again.

Castillo-Patterson asks the Court to prohibit her future re-detention absent changed circumstances, notice, and a hearing before a neutral decisionmaker. The Court finds this relief is necessary to fully realize the intent of this order. Castillo-Patterson has satisfied the requirements for a permanent injunction. *See eBay*, 547 U.S. at 391. She suffered irreparable injury through the violation of her

---

violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez v. Bostock*, No. 25-cv-01404-GJL, 2025 WL 2841574, at *8–9 (W.D. Wash. Oct. 7, 2025). And a "post-deprivation hearing[ ] cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. *Nguyen v. Bondi*, No. 2:25-CV-02723-RAJ, 2026 WL 183819, at *4 (W.D. Wash. Jan. 23, 2026) (revocation of an OSUP requires notice and a pre-deprivation hearing). *Tzafir v. Bondi*, No. 25-CV-02067-JHC-SKV, 2026 WL 74088, at *3-5 (W.D. Wash. Jan. 9, 2026) ("The Government's redetention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to her by the Constitution.").

ORDER GRANTING PETITION FOR HABEAS CORPUS - 9

constitutional right to due process and nearly a year of unlawful detention. No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Castillo-Patterson, as the injunction requires only that Respondents comply with the Constitution before re-detaining her. And the public interest is served by an order prohibiting Respondents from violating the Due Process Clause.

Castillo-Patterson has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has already detained her once without process – she was arrested during a surveillance operation and only identified as having an outstanding order of removal *after* she was detained, *see* Dkt. No. 14-8 at 3, raising concern that, absent injunctive relief, she may be subject to the same due process violation again. Several courts in this district have granted similar relief under comparable circumstances. *See, e.g., Nguyen*, 2026 WL 183819, at * 6; *Wana v. Bondi*, No. 25-cv-2321, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir*, 2026 WL 74088, at *5 (same); *Yuksek v. Bondi*, No. 25-cv-2555, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do v. Scott*, No. 24-cv-2187, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025) (prohibiting re-detention without valid travel document and other specified conditions).

Accordingly, the Court prohibits the re-detention of Castillo-Patterson unless Respondents first provide written notice of the basis for the proposed re-detention

ORDER GRANTING PETITION FOR HABEAS CORPUS - 10

and an immigration court hearing is held to determine whether detention is appropriate.

### 4.3  The motion for a temporary restraining order is denied as moot.

On June 16, 2026, Castillo-Patterson moved for a temporary restraining order prohibiting the Government from removing her from the country while her habeas petition is pending. Dkt. No. 19. Having now ruled on the petition, the Court DENIES the motion as moot.

## 5.  CONCLUSION

Accordingly, the Court orders as follows:

1.  The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.

2.  Petitioner's Motion for a Temporary Restraining Order is DENIED as moot. Dkt. No. 19.

3.  The Government must RELEASE Petitioner within TWENTY-FOUR (24) hours of this order, subject to the conditions of her most recent release order. Petitioner may not be transferred from this district prior to her release.

4.  Within FORTY-EIGHT (48) hours of this order, the Government must provide the Court with a status report confirming that Petitioner has been released from custody and informing the Court of the date and time of her release.

5. The Government may not re-detain Petitioner without providing written notice of the basis for proposed re-detention in advance and a meaningful opportunity to respond, except as authorized by 8 C.F.R. § 241.13(i)(1)-(2).

6. All other relief is denied, without prejudice.


Dated this 17 day of June, 2026 at 1:27 p.m. PT.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING PETITION FOR HABEAS CORPUS - 12